GEORGE A. MAYWOOD v. WILLIAM M. LOGAN.

*Landlord and tenant—Fraudulent concealment by landlord of defect in premises—Recoupment—Vexatious appeal.*

The concealment by a landlord from a tenant of the polluted condition of the water in a well belonging to the leased premises, after his discovery of the cause, which he failed to remove, and which existed at the time of the leasing, will subject him to damages for all of the injuries naturally following from the use of the water, and the tenant, on discovering the facts, is justified in vacating the premises and terminating the tenancy, if the cause of such pollution cannot be removed; its presence amounting to an eviction, relieving the tenant from the payment of rent after such removal.

So *held*, where on complaint by the tenant of the condition of the water an examination was made by the landlord, who discovered the carcass of a dead dog in the well, which he did not remove, but advised the tenant's wife not to use the water for cooking or drinking purposes, but that it was all right for scrubbing, etc., and such use was made of the water as resulted in sickness in the tenant's family, who removed from the premises on discovering the real facts, and, in a suit to

recover rent, the tenant sought to recoup the expenses of such sickness, including physician's bills, etc., as damages; and his right to do so is affirmed, and $50 damages awarded against the landlord for a vexatious appeal, the tenant having recovered in the justice's court, and on appeal to the circuit.

Error to Huron.   (Beach, J.)   Argued November 1, 1889.   Decided November 15, 1889.

*Assumpsit.*   Plaintiff brings error.   Affirmed.   The facts are stated in the opinion.

*Hiram L. Chipman* (*E. F. Bacon*, of counsel), for appellant.

*W. T. Bope* (*W. T. Mitchell*, of counsel), for defendant.

LONG, J.   This is an action of *assumpsit* to recover rent of premises leased to defendant for a dwelling-house and home for his family.   Defendant occupied the premises from May 11 to October 13, 1888, under a verbal agreement to pay seven dollars per month.   He paid no part of the rent, but on the trial defended upon the ground that the well of water situated there, which his family used, was polluted by the carcass of a dead dog, so that his family became sick, and that he was put to expense in caring for them, for services of physicians, nurses, etc. These damages defendant claimed the right to recoup on the trial.

It appears from the defendant's evidence produced on the trial that shortly after defendant's family, consisting of his wife and two small children, took possession, they noticed something wrong with the water in the well, and complained to the plaintiff.   Plaintiff took a man, and caused an examination to be made, and the man going down into the well found therein the putrid carcass of a dead dog, and so rotten that the hair was then coming off.   Plaintiff was advised of this fact, but caused the

pump to be put back, and the covering nailed down, leaving the carcass of the dog in the well. He then stepped to the door, and informed Mrs. Logan, wife of the defendant, that there were some rotten boards in the well, and that she better not use the water for cooking and drinking, but that it was all right for washing and scrubbing. He gave her no intimation of the real situation. The family used the water for three or four days for tea and cooking, and washing potatoes, etc. Within a week or two defendant's family heard rumors that a dog was found dead there, and the defendant went to the plaintiff, and inquired as to the truth of these rumors. The plaintiff denied them, and said there was no dog there, and said the water was all right for washing or purposes of that kind, but probably was not as good as might be for drinking or cooking purposes. The family, after these inquiries, continued the use of the water, the children pumping and drinking it.

The real facts were not discovered until the middle of October, when defendant moved out. During this time the children, who had before been well, became sick with malaria, and nurses and physicians were paid $43 for their care. After the family moved out, and discontinued the use of this water, the children recovered.

The dog was in the well at the time the premises were rented. Before the defendant had arranged for taking possession of the premises he talked to plaintiff about this well, and whether the pump was all right, and was assured that it was. The plaintiff does not deny the finding of the dog there at the time the examination was made, admits that the man told him he thought it was there, but claims that he advised the family not to use the water, and he denies telling the defendant that there was no dog in there. He did not, however, tell the family what he found there. In fact, it appears that

they were wholly unconscious of its presence in the well, and continued the use of the water, supposing the only reason of the bad smell of the water was from some decayed wood or plank which had fallen in.

The issues thus presented were submitted to the jury; the court directing them that the contract of leasing was not a warranty of the quality of the water contained in the well, nor against the presence of dead animals, but if the plaintiff's attention was called to the bad quality of the water after defendant had gone into possession, and the plaintiff then undertook to make an examination, and found the dog there, and the dog had been there from the commencement of the lease, and plaintiff did not communicate that fact to the defendant or his wife, the defendant would be entitled to recoup his damages.

The jury returned a verdict in favor of defendant for the sum of $9. Plaintiff brings error.

Certain requests were proposed by plaintiff's counsel which the court refused, and we think very properly. We see no error in the charge of which plaintiff can complain.

It is evident from the testimony in the cause that the sickness of defendant's family is directly traceable to this polluted water. The jury, by their verdict, have found that the plaintiff knew of the presence of the dead animal in the well, and that he concealed all traces of it from the defendant and his family. It was there when the tenant's term commenced. When the plaintiff learned that this water was so polluted, his duty towards his tenant was to make the fact known, and, if the fact had become known to the tenant, he would have been justified in removing from the premises, and terminating the tenancy, if the cause could not have been removed. It would have amounted to an eviction, and after which

the tenant would not be liable for the rent. It was a great wrong for the plaintiff, after discovering the condition of affairs, to conceal the facts, and permit the defendant and his family to continue the use of the water for any purpose, and such concealment amounted to a fraud upon the rights of the tenant. If either party had a right to complain of the charge, it certainly was not the plaintiff.

The case was one, under the circumstances, where the tenant had a right to rely upon the terms of his leasing as a warranty that the water was wholesome. Special inquiry was made as to the condition of the pump in the well. It was evident to the landlord that the tenant intended to use the water for family purposes, and, though he may not have known of its polluted condition at the time of the leasing, he did know that the tenant was attaching importance to this well of water as a part of the premises to be leased, and assurances impliedly were given by him that it was all right. The defendant, however, is not here complaining of the charge.

In the matter of damages the court also limited the recovery in too narrow a compass in stating it could only be for actual damages sustained in procuring nurses and paying the physicians. The plaintiff knew of the presence of the putrid carcass there, and confesses that he did not advise the family of it, and, if defendant's testimony is true, denied that there was any such thing in the water when questioned about it, thereby fraudulently quieting the inquiries of the defendant, and preventing him from making search as to the true cause of the bad odors of the water. These acts of the plaintiff, his examination of the well, and concealment and denial of the cause of the pollution of the water, permitting the defendant and his family to remain there, conclusively show that his understanding was that the property was

to be put and kept in a healthful condition as a part of his contract to lease, and he therefore became liable to all damages traceable to his acts and misrepresentations. The defendant and his family would have suffered no greater wrong if the plaintiff, when he uncovered the well, and made the examination, had actually polluted the water by placing the animal there. He owed duty to the defendant, as landlord, to see that the premises were in a healthful condition, or at least to disclose any fact within his knowledge which tended to make the premises unhealthful, and not fit for habitation. By his concealment of the pollution of the water, and permitting the family to use it in ignorance of the fact, he made himself liable to damages for all the injuries which would naturally follow. In any view of the case, we think the plaintiff was treated on the trial, and in the charge of the court upon the question of damages, far too leniently.

The cause was tried in the justice's court before a jury, where the defendant prevailed, as well as in the circuit court, where it was again tried by jury. The plaintiff now brings the case to this Court. We view the case as one of vexatious appeal, calling for some redress to the defendant.

The judgment of the court below will be affirmed, with costs, and in addition the defendant will recover the sum of $50 for vexatious appeal.

The other Justices concurred.