TRUEMAN E. STEVENS v. GEORGE E. PANTLIND AND
JOHN A. B. MEAD.

[See 87 Mich. 476.]

*Landlord and tenant—Surrender of premises—Negligence—
Pleading.*

1. A lease of a saw-mill for so long a time as it shall take the lessees to cut certain designated logs, and which provides that the lessees shall return the mill, as soon as the job is completed, in as good condition as when received, natural wear and tear and loss by the elements excepted, does not terminate the moment the last log is cut and the men discharged, but the lessees may retain possession until their lumber is removed, and the mill is put in the condition required by the lease.

2. Until the lessees have put the mill in the agreed condition after the logs are cut, in order to terminate the lease some notice or act equivalent to a notice is necessary on their part which shall say to the lessor that they have abandoned the leased premises and surrendered them to him; and their statement that they have ceased sawing, and discharged their mill hands, and the lessor's knowledge of such facts, are not equivalent to such notice.

3. A lease of a saw-mill provided that the lessees should keep a night watchman, and exercise due care and diligence to protect the leased property from fire, the same as though it were their own. The mill was burned after the lessees had sawed their stock of logs and shut down the mill, and claimed to have turned it over to the lessor. The lessor sued in *assumpsit*, counting on the lease, and the failure of the lessees to take care of the property, and its consequent destruction, and denied that the mill had been turned over to him. And it is held that the court correctly instructed the jury that even if the mill was turned over to the lessor, yet if, by reason of the carelessness and mismanagement of the lessees, fire had been taken from the mill, and put into the sawdust adjoining, such act would constitute a breach of the lease, and if the fire remained there without the knowledge of the lessor, and afterwards broke out, and destroyed the mill, and it was traceable to the carelessness of the lessees, they were liable.

95 MICH.—10.

Error to Osceola.    (Judkins, J.)    Argued February 9, 1893.    Decided March 10, 1893.

*Assumpsit.*    Defendants bring error.    Affirmed.    The facts are stated in the opinion, and in 87 Mich. 476.

- *Kingsley & Kleinhans,* for appellants, contended:

1. The determination of the tenancy, under the lease, was to take place upon the happening of the particular event, viz., sawing the logs mentioned. In such cases the happening of the event would *ipso facto* determine the tenancy and end the lease. When the lease is for a particular term, it is at an end when the time is up, and then the tenant leaves without notice. No formal surrender has to be made. The tenant is not bound to give notice. He simply leaves. There are no formalities to be gone through, no farewells to be spoken; citing Taylor, Land. & Ten. § 465; Wood, Land. & Ten. § 483; *James v. Pope*, 19 N. Y. 324; *Munigle v. Boston*, 3 Allen, 230; *Ashley v. Warner*, 11 Gray, 43; *Flagg v. Badger*, 58 Me. 258.

*M. Brown,* of counsel for appellants, contended:

1. The plaintiff knew that the property was in great danger of being destroyed by fire; he took no precaution or measures whatever to protect it, or prevent it from being destroyed; he went home and went to bed; and he cannot recover in this action; citing *Grippen v. Railroad Co.*, 40 N. Y. 44; *Railroad Co. v. McClelland*, 42 Ill. 355; *Railroad Co. v. Pennell*, 94 Id. 448; *Railroad Co. v. Spear*, 44 Mich. 169.

*Charles A. Withey,* for plaintiff.

GRANT, J.    The terms of the lease involving the questions now raised are stated in 87 Mich. 476. The evidence there given is also substantially the same as in the present record, which, in addition, contains evidence, given on the part of plaintiff, tending to show that at the time of the alleged surrender of the property to plaintiff there were logs in the mill-yard, lumber and slabs in the mill, and lumber upon the docks and in the yard. The evidence will be referred to in connection with the legal questions to be determined.

1. The court left it to the jury to determine whether the lease was in fact terminated. This ruling and the instructions given were correct if, under the plaintiff's own showing, the lease had not expired. No time was fixed in the lease for its termination. This depended upon a contingency, viz., the cutting of the logs which the defendants had in plaintiff's mill-yard and on lots adjoining, within the meaning and construction of the lease as determined from its "four corners." It did not by its terms expire the moment the last log was cut into lumber and the workmen discharged. The defendants possessed the undoubted right to retain possession for the removal of their lumber, and for putting the mill in the condition required by the contract, before turning it over to plaintiff, who gave evidence tending to show that defendants' foreman and agent, Mr. White, had, after shutting the mill down and discharging the workmen, made a contract for the removal of the lumber still there. When the mill was shut down, plaintiff was legally entitled to presume that defendants would perform their contract before surrendering, and that they desired to retain possession till that was done. Not having complied with the terms of the lease, according to plaintiff's evidence, some notice or act equivalent to a notice was necessary on the part of the defendants saying to him that they abandoned the premises and surrendered the property. The bare statement that they had ceased sawing, and had discharged their mill hands, and the knowledge of these facts by the plaintiff, are not equivalent to such notice. If they had left the property in the condition required by the lease, or, in other words, if they had fully performed the contract, and then abandoned the premises, with the knowledge of the plaintiff, there would be much force in the contention that *ipso facto* the lease was at an end, and no formal surrender necessary. But the premises · were

not in this condition.    According to plaintiff's testimony,. this fact was admitted by White, who had 'the exclusive charge of defendants' business at the mill, and told plaintiff that Mr. Watson, who had negotiated the lease on behalf of defendants, would be there in a day or two, fix the matter up, and turn the property over.    No statement was made to plaintiff that defendants did not intend to put the property in the condition contracted for, and, as already stated, he had the legal right to presume that they would do so.    If the jury believed the testimony of White, the property was surrendered, and the plaintiff in possession.    If they believed the evidence for the plaintiff, there was no surrender,. and the mill was legally in the possession and under the control of the defendants.    The question was fairly and properly submitted to the jury.

2. It is alleged as error that the court refused to instruct the jury that—

"Mr. White, in his capacity as agent or superintendent of the job of cutting these logs, had no implied authority, arising from his position as such agent, which would authorize him to make any arrangement with the plaintiff looking towards the continuance of the defendants' tenancy after the logs were cut and the mill shut down for good."

Upon this point the court instructed the jury as follows:

"The cutting of the timber of itself would determine the contract if no words were spoken.    For instance, the defendants hired the mill for a specified time and purpose; when that time arrived, and the purpose was fulfilled by the cutting of the timber, then their rights, of course, by operation of law merely, terminated, and they could not hold it longer without the plaintiff's consenting to a renewal of the lease; that is clear; and if no words were spoken other than discharging the employés and closing the mill, and leaving it in the plaintiff's hands, it went back to the plaintiff's hands, and he could not recover on the mere ground that it was in the hands of the defendants.    But I think this also: That although White was

the foreman and employé mainly for the purpose of cutting the timber under the lease, and acting for the defendants in this suit, and being on the ground and acting for them, when an objection was made by the plaintiff for the reason assigned by him, White had the power to make the arrangement claimed by the plaintiff to have been made; and if the plaintiff refused to take the mill back on the ground assigned, and White said, ' All right. Wait a few days. Major Watson will be up to surrender the mill over to you,'—and he relied upon it, it would not be in the possession of the plaintiff meanwhile, but it would still be under the control and dominion of the defendants."

The court erred, as already shown, in holding, as it did in the language above quoted, that cutting the timber and shutting down the mill terminated the lease. It entirely omitted certain obligations resting upon defendants, and specified in the lease, which have been pointed out above. But this part of the charge was favorable to the defendants, and was in exact accord with their theory.

The conversation with White, as detailed by plaintiff, made no new arrangement with the defendants, nor changed the terms of the lease. Plaintiff testified that White told him that he had no authority to turn over the mill, and that he did not offer to turn it over, but said that Watson would attend to that when he came up. Defendants resided in Grand Rapids, while the mill was situated in Osceola county, a long distance away. Only one of the defendants visited the mill during the time of the lease, and he only once or twice. White was their sole agent there, with authority to employ and discharge men, and had the supervision of the entire business. If he had no authority to make the statement attributed to him, which counsel and court seem to have construed into some new arrangement, it is equally clear that he had no authority to bind his principals by turning the property over with the conditions of the lease unfulfilled. But the plaintiff, under the case made by him, did not recognize the lease as terminated, or

that he was making a new arrangement contrary to its terms. The evidence of this conversation was competent only for the purpose of showing that the lease was not in fact surrendered. It was a part of the *res gestae.* The charge complained of was erroneous, and improperly limited the issue involved. It is evident, however, that the jury found plaintiff's statement of the conversation to be correct. This being so, the error was without prejudice; for, if plaintiff's version was correct, there was no surrender and no change of possession.

The court erred, but against the plaintiff, in saying to the jury that, in the absence of spoken words, the mill was left in plaintiff's hands and went back to him. Plaintiff was employed by the defendants. was himself discharged, but the rent was unpaid. He lived in a house near by, and saw all the preparations for closing. But the legal result of all this was not to restore to plaintiff the possession and control of the property, because the mill was not in the condition in which defendants had agreed it should be when turned over, and defendants had signified no intention not to perform their contract in this regard.

3. Defendants insist that the declaration is based solely upon the theory that the fire occurred while they were in possession of the property; that, if the fire occurred after the termination of the lease, defendants could only be held liable in an action on the case for negligence, and not in an action based upon the violation of contract obligations; and that, therefore, it was error for the court to instruct the jury that—

"Even if the mill was turned over to the plaintiff, if you find such to be the fact, yet if, by reason of the carelessness and mismanagement of the defendants, fire had been taken from the mill, and put into the sawdust adjoining, it would constitute a breach of the contract; and if the fire remained there without the knowledge of the plaintiff, and afterwards broke out, and destroyed the mill,

and it is traceable to the carelessness of the defendants, then they are liable."

The declaration set forth the contract in full; alleged the duties of the defendants under it; that the defendants wholly neglected such duties and their obligations under the contract; neglected to keep a night watchman; neglected due care and diligence to preserve the property from damage and destruction by fire; allowed the slabs, sawdust, and other *debris* to accumulate in and about and immediately adjoining the mill; negligently threw and deposited the fire from the furnace into, upon, and about such sawdust and other *debris*. All these acts were alleged to be breaches of the contract. Plaintiff planted his right of action solely upon the violation of the contract, and, by his proof, connected the injury directly with such violation. It is immaterial, therefore, whether the injury resulted before or after the termination of the lease. In either event, an action would lie upon the contract. It is true the declaration alleged that defendants had not returned the property to plaintiff; but this was not the gist of the action, nor did it of itself afford an independent ground of recovery. We think the instruction was correct.

4. The court instructed the jury that whether the mill was turned over to plaintiff or not, if he knew of the fact that fire was smoldering in the sawdust after defendants' agent went away and left it, and knew of the approaching danger by reason of it, and took no measures to prevent it from burning the mill, it would be a bar to this action. Defendants insist that the proofs conclusively show that plaintiff did know of the fire there, and that it was likely at any time to break out; that he took no steps to watch it or prevent it; and that, therefore, he was in law guilty of contributory negligence. The mill was closed down about 4 o'clock P. M. July 11. Plaintiff testified that the mill had caught fire from the sawdust pile shortly

before a temporary shut-down for the 4th of July; that he had no knowledge of any fire after that; that on the 11th, when the mill closed down, he told White that "it was very dangerous ·to leave· the mill in that condition; that the mill had already caught fire, and was liable to again; and that sawdust held fire in it any time almost." Defendants kept a watchman upon the property during the night of the 11th, and plaintiff testified that he did not know until. after the fire that they had withdrawn the watchman.     The fire occurred on the morning of the 13th, about 4 o'clock.

Certainly the plaintiff was not called upon to watch the property, or take any steps to protect it, until he knew that the watchman was withdrawn, and that defendants had withdrawn all protection over the property.     Whether this was so was a question of fact for the jury.     If the plaintiff's evidence be true in regard to throwing the fire from the furnace into the sawdust and slabs, White, whose negligence was the negligence of the defendants, was guilty of gross negligence, and a gross disregard of plaintiff's rights and his own employers' interests.     The testimony on plaintiff's part showed that he knew that the sawdust pile had repeatedly taken fire, and that he had helped to put it out.     Under these circumstances, the law will not relieve ·defendants from their own negligence· without showing that plaintiff knew that they had abandoned the property, and would thereafter exercise no care or control over it.     It is not entirely clear that any obligation rested upon him to look after the property until the lease was terminated. Plaintiff had no actual knowledge that there was fire in the sawdust.     He knew that there was danger of its being there, and so informed White.     White, recognizing the danger, and knowing the provision of the contract, kept· a watchman the following . night, and then withdrew him, without any notice to plaintiff.     Under these circumstances,

it would be difficult to discover any legal obligation upon the part of plaintiff to watch the property.

The charge was as favorable to the defendants as was justified by the evidence.

Judgment affirmed.

The other Justices concurred.