## MASON v. HOWES.

1. LANDLORD AND TENANT—COVENANT TO REPAIR—LEASE FROM MONTH TO MONTH.

That a lessee from month to month continues to occupy the premises for more than one month after the landlord's refusal or neglect to make promised repairs does not make his holding a new one, independent of the terms of the original tenancy, so as to relieve the landlord from liability for damages thereafter arising from the defective condition of the premises.

2. SAME—CONTRIBUTORY NEGLIGENCE.

A tenant who remained in leased premises after knowledge that the plastering was defective, and that some of it had fallen, was not guilty of contributory negligence, precluding a recovery from the landlord of damages resulting from falling plaster after he had promised to make all necessary repairs where she had had no previous experience with defective plaster, and was acting in the belief that the

landlord would tear off the defective plastering if it was dangerous.

3. SAME—BREACH OF COVENANT—DAMAGES.

A landlord who agrees to make necessary repairs for the tenant, and afterwards knowingly leaves the plastering in a defective condition, is liable for damages to her stock of goods caused by fire from a lamp upset by falling plaster.

Error to Calhoun; Smith, J. Submitted November 14, 1899. Decided December 12, 1899.

*Assumpsit* by Alice Mason against George E. Howes, trustee of the estate of Clement Wakelee, deceased, for the breach of a covenant to repair leased premises. From a judgment for plaintiff, defendant brings error. Affirmed.

*Hulbert & Mechem*, for appellant.

*Howard W. Cavanagh*, for appellee.

MOORE, J. Plaintiff was for some years the tenant of defendant, occupying as a millinery shop and residence a suite of rooms in the Wakelee Block. The arrangement was made through Mr. Wakelee, the agent of defendant. It was her claim that defendant was to keep the premises in repair, that he failed to do so after his attention was called to the necessity of making repairs, and that because of his negligence a quantity of plaster fell from the ceiling, injuring her goods, and upon another occasion upsetting a lamp and setting fire to her goods. Her declaration has several counts, in which she claimed, not only general damages, but special damages. The counts set up in great detail her claims. Her rent was payable monthly. The defendant denied any promise to keep the premises in repair. From a judgment obtained by the plaintiff in a trial before a jury, defendant has brought the case here by writ of error. There are 22 assignments of error in the case. We do not deem it necessary to discuss all of them.

It was claimed in the court below, and is claimed here, as follows:

"Even if Mr. Wakelee, as the agent of defendant, in April, 1889, agreed to make repairs, that agreement could not be carried along and held operative for any period longer than a month from the time when he had been requested to make repairs, and refused or neglected so to do. By continuing to occupy the premises after such refusal or neglect on the part of the landlord, a new holding and agreement is made between the parties. The term of the lease at any one time cannot be considered as extending more than one month. The duties and obligations of the parties that they have in contemplation when they enter into such an agreement cannot be considered as extending for a longer time than that term."

No authority is cited in support of this proposition, and it would be very strange if one could be found. The parties had a right to make such a contract as they saw fit, and it would be anomalous indeed if one of the parties, by breaking his contract, could by that act make a new and different one, more favorable to himself.

It is urged, because plaintiff knew of the defective condition of the plaster, that by remaining in the premises she was guilty of contributory negligence, and assumed the risk, and cannot recover; citing *Town* v. *Armstrong*, 75 Mich. 580, and other cases. In the case of *Town* v. *Armstrong*, by the showing made by the plaintiff she went into a dangerous place, fully aware of the risk she was taking, and for a trifle. The court very properly held that she could not recover. In this case the plaintiff claimed that, while she knew the plaster was defective, she did not know it was dangerous. She gave testimony tending to show that the trouble with the plaster was that no hair was used in the making of it, and that it was rotten and would not cling to the lath. She testified, among other things:

"I never had any experience with plaster before this time; never had anything of the kind to contend with. I thought I would draw his attention to it, if he thought it

was necessary. He was the judge. He was the land-lord, and I rented of him, and paid my rent, and I left it to his knowledge as to whether it was best to tear it off or not. * * * I left it to Mr. Wakelee's judgment. If I had known this plaster was in a dangerous condition, I would not have stayed there. * * * I supposed it was safe when I called his attention to it."

And again:

"*Q.* I will ask you whether at the time you say you noticed something about this plastering, and called Mr. Wakelee's attention to it, whether or not the statement and act of Mr. Wakelee in permitting it to remain as it was allayed your suspicions, and threw you off your guard, as to the plaster being dangerous.

"*A.* It did; it threw me off my guard. I thought if it was dangerous he would have it taken off, as he attended to all such business.

"*Q.* I will ask you whether, relying on his statement of what he said about it, and his action in the matter, you went on believing you were safe in so doing. * * *

"*A.* I did; I thought I was safe in doing so; we allowed him to be the judge."

Under such circumstances, we do not think it can be said that, because plaintiff remained in the building after she knew that some of the plaster had fallen, she was guilty of contributory negligence, so that she cannot recover from her landlord for a breach of his agreement to repair.

The remaining question calling for attention relates to the question of damages. The court was requested to charge the jury as follows:

"The only damages which can be recovered by the plaintiff are such as the parties are presumed to have con-templated from the agreement they made. The tenancy being at will, the parties cannot be presumed to have assumed any risk for a longer period than one month; and the plaintiff, if dissatisfied with the condition, could repair the plastering herself, and charge the expense to the land-lord, or could terminate the tenancy; and she could do the latter at any time, if in fact the condition of the prem-ises was such as to render them dangerous. The damages

which the plaintiff can recover, if entitled to any, are to be determined by ascertaining how much less the rental value of the premises was with the plastering in an unsafe condition than it would be if the repairs had been made as agreed. These damages cannot exceed one month's rent, unless the jury should find that the rental value of the premises in good condition would actually exceed the rent charged and paid."

He refused to so charge, and instructed the jury as follows:

"I instruct you that the measure of damages, which is one for a breach of the covenants of this lease, that the plaintiff, if you find that she is entitled to recover, can recover such damages as are shown to be the legal and approximate consequence of the breach complained of, and such damages as can be presumed to have been anticipated by the parties at the time of making the contract. But these damages can be no more than are shown to have directly and immediately followed from the acts of the defendant complained of. Loss of profits which the plaintiff might have made except for the interference with her business are too remote and speculative, and you should not consider them in determining the amount of the damage."

I do not see how this contract differs from any other. It is not a case where the tenant has agreed to make repairs. Here the landlord has agreed to do so, and has failed. I do not see why the landlord should not be liable for a breach of his contract, just as any other person who was a party to a contract would be. Where he has violated his contract, he should be liable for all the injuries resulting therefrom. *Stevens* v. *Pantlind*, 95 Mich. 145; *Culver* v. *Hill*, 68 Ala. 66 (44 Am. Rep. 134); *Watson* v. *Hooton*, 4 Ill. App. 294; 2 Wood, Landl. & Ten. (2d Ed.) § 400. See *Maywood* v. *Logan*, 78 Mich. 135 (18 Am. St. Rep. 431).

The judgment is affirmed.

The other Justices concurred.