KEZELI v. RIVER ROUGE LODGE, NO. 410, INDEPENDENT
ORDER OF ODD FELLOWS.

1. FRAUDS, STATUTE OF—LANDLORD AND TENANT—ORAL LEASE.
    A verbal agreement to rent premises "for a long term
    of years, at a rental to be afterwards agreed upon," is
    not only void within the statute of frauds, but is too
    vague and indefinite to be valid.

2. APPEAL AND ERROR—EVIDENCE—HARMLESS ERROR—CURING ER-
ROR—INSTRUCTIONS.
    In an action by a tenant against his landlord, error in
    admitting testimony as to a void lease was rendered harm-
    less by the court's charge instructing the jury that the
    lease was void, and to find no damages on that branch
    of the case.

3. LANDLORD AND TENANT—LOSS OF PROFITS—EVIDENCE—DIRECTED
VERDICT.
    In an action by a tenant against his landlord for loss of
    profits because the building was not put in proper repair,
    as agreed, after being moved to a new location, evidence
    examined, and held, too indefinite to be submitted to the
    jury as the basis of recovery.

4. SAME—HOLDING OVER—PRESUMPTIONS.
    Where, after the expiration of a lease, a new bargain was
    made, whereby the building was to be moved and the
    tenant was to remain under a different rental, coupled
    with the agreement of the landlord to promptly repair,
    the presumptions as to the tenant holding over do not
    apply.

5. SAME—NEW LEASE—AGREEMENT TO REPAIR—QUESTION FOR JURY.
    Where the question of the landlord's agreement to make
    repairs was in dispute, it was properly submitted to the
    jury.

Error to Wayne; Van Zile, J. Submitted January
19, 1917. (Docket No. 120.) Decided March 29, 1917.

Case by Kalman Kezeli against River Rouge Lodge,
No. 410, Independent Order of Odd Fellows, for dam-
age to plaintiff's business through defendant's failure,
as landlord, to repair premises as agreed. Judgment
for plaintiff. Defendant brings error. Reversed.

*Seneca C. Traver* and *Ignatius J. Salliotte,* for appellant.

*Daniel P. Cassidy,* for appellee.

STONE, J. Action to recover damages by tenant against landlord for rendering premises untenantable, and damage to his business.

The theory of the plaintiff's claim is that in the month of May, 1913, he was in possession of a building known as 2214 West Jefferson avenue, Detroit, where he carried on a grocery and meat market business. Said building belonged to the defendant, and there was an outstanding lease to Gunsberg Bros., which expired July 1, 1913; that, while plaintiff took no formal assignment of such lease, he went into possession by consent of former tenant, was recognized by the defendant as its tenant, and was paying a monthly rental of $30 to defendant; that in April, 1913, the board of building trustees of the defendant, in charge of such building, notified the plaintiff that defendant intended to move the building from said location to West End avenue, around the corner, and build a new building on the West Jefferson site; that they agreed to put the moved building in good condition, suitable for plaintiff's business, as soon as it was moved, if plaintiff would continue to occupy it, and further promised "said plaintiff that, after the erection of said new building on West Jefferson avenue, said defendant would lease said new building on West Jefferson avenue to the said plaintiff for a long term of years at a rental to be afterwards agreed upon."

The plaintiff avers that he accepted said proposition. He further claims that about the middle of May, 1913 (the plaintiff still occupying the building and carrying on his said business), defendant raised the building four feet above the sidewalk and rested the same on blocks preparatory to moving, but seemingly forgot

about it and left it in that condition for seven weeks; that the entrance to the shop was bad, and plaintiff was obliged to place boxes in front, to enable customers to get in and out thereof; that finally, about the last day of June, defendant's employee started the actual moving of the building, and on the next afternoon the moving of the building to the new site was completed; that while it was being moved it was necessary for plaintiff to station a man at the door to help customers in and out of the store; that, as a result of moving the building, it was badly damaged both inside and out; that the roof was left in bad shape, and leaked in many places, the plaster and walls fell down, and the entrance and steps were out of repair; that there was no toilet, no water or gas connected with the building, as formerly.

Plaintiff claims that, because of the damaged condition of the building, he had great trouble in conducting business; that the side fell down, and the rain came in through the leaky walls and roof, and customers had difficulty in getting into and out of the store; that the store could not be kept clean because there was no water in the building, and he had to use kerosene lamps to light the store, and two women fell and were injured because of the defective steps; and that his business fell off to the extent that, instead of making a profit, he suffered a loss. The plaintiff claims that defendant did not put the building in repair as promised, and after many and constant complaints he was obliged to and did move out about the middle of November, 1913.

The plaintiff offered testimony to support his claim. The defendant denied that it ever made the agreement to repair claimed by the plaintiff, that the rent was reduced because of interruption of business in moving, and that plaintiff never complained of want of repair until after he moved out, and defendant made issue

upon the entire claim of the plaintiff. The case was tried by a jury, and resulted in a verdict and judgment for the plaintiff in the sum of $1,000 damages.

Upon the trial the following was testified to by the plaintiff:

"Exhibit 1 is the book that shows what I took in, money, and pay out. I kept that book and made the figures on it. This shows the money that I took in and paid out ever since I bought the store from the 1st of September up to date. It started from the 1st of September, 1912, and covers all the time that I was in the store.

"*Mr. Cassidy:* I offer it in evidence.

"*Mr. Salliotte:* I object to that as being incompetent and immaterial; not having any bearing on the issue in this case.

"*The Court:* He may use it as a basis to testify what his disbursements and receipts were. He can testify whether that book is correct, whether the entries are correct. (Exception.)

"This book shows the correct disbursements and receipts of my business during the period complained of. In December, 1912, I paid out $1,796.47, and took in $1,860.26. In January, 1913, I took in $2,099.13 and paid out $1,675.34. In February, I paid out $1,509.02 and took in $2,059.26. In March, I paid out $1,654.21 and took in $1,949.59. In April, I paid out $1,312.46 and I took in $1,923.81. In May, I paid out $2,038.54 and I took in $2,519.20. The first part of May they started to lift up the store and put the blocks under it. In June, I paid out $1,881.98 and took in $1,864.69. In July, I paid out $1,299.07 and I took in $669.88. In August, I paid out $1,334.29 and I took in $1,207.13. In September, I paid out $1,589.41 and I took in $884.83. In October, I paid out $1,636.67 and I took in $1,142.78. In other words, I took in during the first five months $10,936 and paid out. $8,188, which made a difference of $2,348 in my favor. During the next five months beginning June, while I was being moved and while on West End, I took in $6,166 and paid out $7,719, and I lost it because my customers left me."

George W. Pittinger, treasurer of the building trustees of the defendant, was called under the statute, and among others things he was asked the following question, and was permitted to answer over the objection of defendant as follows:

"*Q.* Did you give Mr. Kezeli an opportunity to lease or to rent the Jefferson avenue store, the new one?

"*Defendant's Counsel:* I object to that as incompetent, irrelevant, and immaterial.

"*The Court:* You may answer the question. (Exception.)

"*A.* No, sir."

At the close of plaintiff's testimony, and again at the close of all the evidence, the defendant moved for a directed verdict in its favor, upon the ground, among others, that there had been no proper basis in the evidence for loss of profits, and also it moved that the testimony of the plaintiff in regard to the receipts and disbursements be stricken out; which motions were denied and exceptions taken.

The defendant requested the court to charge the jury as follows:

"(10) There is no evidence in this case as to any loss of profits on the part of the plaintiff, and you therefore cannot take that into consideration in determining your verdict.

"(11) Loss of profits which a tenant might have made, except for the interference with his business, are too remote and speculative to be recovered, for breach of his landlord's contract to repair."

Neither of the above requests was given. The court charged the jury upon the subject of damages as follows:

"Now, how are we to arrive at the damages? The only way suggested by the plaintiff is that we are to take into account the profits, the conditions of trade of the plaintiff when he was located on Jefferson avenue, where the new store is now, from which the old

store was moved, and they put in evidence here show-
ing the trade of this man from day to day, and month
to month, for some considerable time, and the basis
on which you are to determine or to take into consid-
eration, rather, in order to arrive at what the profit
would have been. Now, of course, that cannot be
absolutely the amount, because the store is moved on
a different street in a different locality. Then, there
are different surroundings there, and all those things
have to be taken into consideration if you are to arrive
at the profits. In other words, it seems to me, gentle-
men, that you would have to find in determining this
amount of profit, or this amount of damage, if you
come to that question, you would have to determine
now what would that store put in the condition that
they agreed to put it in, if you find that they did agree
to put it in any condition of repair or fix it up, what
he would be able to do on the place, on the spot where
they put this store with the store repaired and put in
condition that it was agreed to be put in; that is to
say, you are to take that store, if you find the proof
sustains it—you are to take that store, just as it would
have been had it been repaired and put in condition
for business, place upon the spot where it was placed,
and that, in conjunction with the trade which the
party had. All these things, and all these circum-
stances, would have to be taken into consideration by
you in order to determine what the damage to this
man was by reason of the defendant failing to put the
building in the condition that would conform with the
agreement that was made at the time it was moved,
and with the agreement that was made for the pur-
pose of keeping him in the store, as is plaintiff's the-
ory. Now, that is what you will have to do with ref-
erence to determining the damage."

The defendant has brought the case here for review,
and among the errors assigned are the following:

(1) That the court erred in permitting the witness
Pittinger to answer the question relating to lease of
new store, above set forth.

(6) That the court erred in refusing to strike out
the testimony of plaintiff in regard to the receipts and
disbursements, above set forth.

(14) Error in refusing to give defendant's tenth request to charge.

(15) Error in refusing to give the eleventh request to charge. .

(16) That the court erred in charging the jury as above set forth.

1. The verbal agreement to rent premises to "plaintiff for a long term of years, at a rental to be afterwards agreed upon," is not only within the statute of frauds, and void, but is too vague and indefinite to be valid. But the error in admitting the testimony was rendered harmless by the charge of the court wherein the jury were instructed that such agreement was void, and to find no damages on that branch of the case.

2. The other assignments of error above referred to may be considered together. The testimony of plaintiff relating to receipts and disbursements in his business did not furnish a basis sufficient to warrant the submission of the question of loss of profits to the jury. There was no evidence as to whether the new location was as good as the old. When asked that question, the plaintiff replied: "Maybe it is, maybe not." There was no evidence that the stock or assortment of stock was the same in the new location as in the old. There was no evidence that the conditions were the same, or that the attention to business on the part of the plaintiff and his help was the same. The only testimony that was introduced by the plaintiff in this regard was a mere summary of his receipts and disbursements during the year. There was no testimony as to what the expenses of conducting his business were, as to the percentage of profits that he derived from his sales, nor whether it continued the same during the period covered, nor the amount of stock that he had on hand in December, 1912, or in November, 1913. When, at the close of the testimony, it appearing that the plaintiff had not produced any

evidence upon these subjects, we think that the court should have granted the motion to strike, and that defendant, upon the condition of the record, was entitled to have the tenth request to charge given, and that the refusal to give it was reversible error. The jury should not have been allowed to speculate or guess upon this question of the amount of loss of profits. Without holding that loss of profits may not upon proper showing be the basis of recovery, we must hold that no sufficient foundation was here laid for such recovery. The recovery was a substantial one, and a reading of the record demonstrates that other evidence of damages was negligible, and the recovery must have been mainly for loss of profits. In fact, we are of the opinion that the amount of recovery, upon the evidence in the record, resulted in a miscarriage of justice. It is true that the charge of the court somewhat modified the claim, but in our opinion the whole subject of loss of profits should have been taken from the jury.

We have examined the other questions urged by defendant for reversal, but do not think them meritorious. Counsel overlook the claim of the plaintiff that his old lease expired July 1, 1913, and that a new bargain was made wherein and whereby the building was to be moved and he was to remain under a different rental, coupled with the agreement of defendant to promptly repair. Under such circumstances, the presumptions as to a tenant holding over, do not apply. *Mason* v. *Howes,* 122 Mich. 329 (81 N. W. 111). Whether such an agreement was made or not was properly submitted to the jury.

For the errors pointed out, the judgment below is reversed, and a new trial granted, with costs to appellant.

KUHN, C. J., and OSTRANDER, BIRD, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred.