## REDINGER v. STANDARD OIL COMPANY.

1. Contracts—Implied Terms.
    Essential terms of a contract not expressly stated by either party may be implied from either ambiguous or nonexistent language by looking to the circumstances surrounding the transactions to determine the intent of the parties.

2. Same—Construction—Intent.
    A contract, especially an oral contract, is to be read in the light of the circumstances attending its execution and construed so as to effectuate the intent of the parties when it was made.

---

References for Points in Headnotes
[1] 17 Am Jur 2d, Contracts § 255.
[2, 3] 17 Am Jur 2d, Contracts §§ 244, 245.
[4] 17 Am Jur 2d, Contracts § 486.
[5] 19 Am Jur 2d, Corporations § 980.
[6] 22 Am Jur 2d, Damages §§ 174, 329.
[7] 22 Am Jur 2d, Damages §§ 2, 23–25.
[8] 22 Am Jur 2d, Damages § 329.

3. SAME—CONSTRUCTION.

A promise must be interpreted in the sense in which the promisee knew or had reason to know that the promisor understood it.

4. SAME — APPEAL AND ERROR — GASOLINE STATION — YEAR-TO-YEAR LEASE.

It was not error for the trial court to permit plaintiff lessee to show by parol evidence that there was an implied agreement between the parties that lease of gasoline station was to be on a year-to-year basis, since the record shows that plaintiff knew his lease would be essentially similar to the lease of his predecessor and the yearly term of the lease was so obvious to both parties that neither felt the necessity to mention it expressly.

5. SAME—CORPORATIONS.

Corporations are legal persons and, as such, are bound by their contracts in spite of internal disagreements affecting policy.

6. DAMAGES—BREACH OF CONTRACT—LEASE OF GASOLINE STATION —LOSS OF PROFITS—EVIDENCE.

Jury verdict for plaintiff of $3,250 for breach of an oral lease of a gasoline station by defendant oil company held, proper, where the loss of profits was a direct result of the breach and the amount of damages found by the jury well within range of evidence.

7. SAME—MATHEMATICAL PRECISION.

Mathematical precision as to damages is not required in situations of injury, where the very nature of the circumstances makes precision unattainable.

8. SAME—OPINION EVIDENCE—BREACH OF CONTRACT.

Damages for loss of profits caused by breach of contract, which were incapable of mathematical demonstration, may be shown by opinion evidence.

Appeal from Newaygo; Van Domelen (Harold), J. Submitted Division 3 November 9, 1966, at Grand Rapids. (Docket No. 1,370.) Decided February 14, 1967. Rehearing denied April 12, 1967. Leave to appeal denied July 25, 1967. See 379 Mich 772.

Declaration by Fred Redinger against Standard Oil Company, an Indiana corporation, for breach of

an oral lease. Judgment for plaintiff. Defendant appeals. Affirmed.

*Paul L. Greer,* for plaintiff.

*Reber & Reber,* for defendant.

BURNS, J. Plaintiff Redinger brought an action for breach of an oral lease contract against defendant Standard Oil Company. For a number of years Redinger was under a written yearly lease with the Standard Oil Company to operate a gasoline station at the intersection of M–37 and M–82 on the north side of Newaygo. The defendant owned another more profitable gasoline station down the hill from the one Redinger was operating and closer to the downtown area of Newaygo.

Redinger testified he heard that Decker, the operator of the more desirable station down the hill, intended to terminate his lease with defendant. On December 30, 1959, Redinger asked Wilson, who was acting for the defendant, if the company had found a new man to operate the Decker station. When Wilson answered, "No," Redinger asked, "Can I have it?" and Wilson said, "Yes," explaining that there would, of course, be some stipulations that they would have to discuss. The next day, December 31, 1959, Wilson took Redinger to the Decker station where Wilson introduced him to Decker, his partner, and a bookkeeper, and said, "Fred Redinger will be the new operator of the station." Redinger testified that he agreed with Wilson to cooperate in finding someone to take over the station on the hill and that he would raise the money necessary to finance the transaction. Redinger claimed that Wilson gave him 30 days to fulfill these conditions. Wilson stated that Decker, not he, fixed this time limit.

It is not disputed that Redinger agreed to pay Standard Oil the same rental as Decker was paying under his lease, *i.e.*, 1–3/4 cents per gallon of gasoline sold. Nothing was said at the time about the term of the lease, and no formal agreement was drawn. Redinger testified that his lease for the station on the hill was yearly or from year to year, that Decker's lease was for the same term, and that it was company policy for Standard Oil to negotiate yearly leases. This testimony was uncontradicted by defendant.

Wilson instructed Decker to give the keys to Redinger and Redinger began to operate the station on January 2, 1960. For some 2 weeks plaintiff worked daily cleaning up and operating the Decker station, while an assistant ran the station on the hill. Plaintiff purchased about $300 worth of tires, batteries and accessories for the Decker station and also sold some of Decker's inventory. He purchased gasoline for the station, but before he was able to sell all of this he was asked to leave the station. During the 2-week period he brought many of his customers from the station on the hill down to the more conveniently located Decker station. According to his uncontradicted testimony some of these customers never returned to the station on the hill.

On January 15, 1960, Wilson and one Bernard, also representing Standard Oil, asked Redinger to leave, as a formality in order to lease the station. Redinger claimed that Bernard said, "You'll be back in here in 2 weeks." Wilson denied hearing this statement, but did not deny that it could have been made out of his presence. Bernard was unavailable for testimony. Redinger quit the premises voluntarily and was never permitted to reoccupy the station. It is apparent from the record that Wilson and Bernard were forced into this embarrassing reversal of

position as a result of superior orders issued after a reappraisal of Redinger by Standard Oil Company's credit department. Plaintiff testified that as soon as he was out of the Decker station defendant began negotiating with one Rogers to take the lease. Around the end of January, 1960, Redinger contacted Wilson to advise him that he had obtained sufficient financing. Wilson testified that he told Redinger he was not getting the lease on the Decker station because of his poor credit with the company. Plaintiff claimed the statement was that his credit in general was poor.

Plaintiff's testimony that the Decker station would net him approximately twice as much yearly as would the station on the hill, although objected to, was left uncontradicted. Redinger testified that for the year 1959–1960, he pumped 86,000 gallons of gasoline for a net profit of $5,400 at the station on the top of the hill. Wilson estimated that the Decker station might average 500 gallons a day, or 180,000 gallons a year.

Defendant made a motion for a directed verdict, which was denied. The jury found for plaintiff in the amount of $3,250.

The defendant petitions this Court for reversal and entry of judgment of no cause of action, or in the alternative, for reversal and a new trial.

The first issue raised by the defendant is:

"Is plaintiff entitled to recover for breach of a claimed oral agreement of defendant to lease a service station to plaintiff, wherein neither the length of the lease term, nor other essential terms, were either mentioned or agreed upon?"

Since it was clearly established by the testimony of both parties to the contract that the rent was to be 1-3/4 cents per gallon sold, the only basic term,

not expressly agreed upon by the parties, was the period of time for which the lease was to run. The defendant cites much authority to the effect that where an essential term is not agreed upon there can be no contract. It is argued that since the lease term was not expressly mentioned by either party, there was no agreement on this term. It is elemental that not all agreements are always expressed. Courts have often considered it necessary to imply certain terms from either ambiguous or nonexistent language by looking to the circumstances surrounding the transaction to determine the actual intent of the parties at the time of the contracting, even where essential terms are not expressly stated by either party. The Court in *W. J. Howard & Sons, Inc.* v. *Meyer* (1962), 367 Mich 300, at 308 stated:

" ' "The contract is to be read in the light of the circumstances attending its execution. It should be construed so as to effectuate the intent of the parties when it was made." *Whitman* v. *Whitman* [1919], 207 Mich 337, 348.' "

This is more true of oral contracts because the parol evidence rule is not an obstacle. In *Ardis* v. *Grand Rapids & Indiana R. Co.* (1918), 200 Mich 400, at 414, the Court cited *Tallcot* v. *Arnold,* 61 NY 616 as saying:

" 'The promise must be interpreted in the sense in which the promisee knew or had reason to know that the promisor understood it.' "

Because of his past dealings with the company, Redinger knew that as a matter of policy Standard Oil Company leased its stations on a year-to-year basis. Redinger knew that his lease would be essentially similar to Decker's lease. Indeed, the yearly term of the lease was so obvious to both parties that neither felt the necessity to mention it expressly.

The parties had already expressly agreed that the rent would be the same as in the Decker lease. At the time the contract was made neither party had any reason to believe that the company would wish to deviate from the usual yearly lease agreement. When Wilson agreed to let Redinger have the lease there was the requisite meeting of the minds on the basic terms of the lease. Where the intent of the parties is so transparent, especially when the contract is oral, courts will not require an express statement; what is not stated will be implied. *Stimac* v. *Wissman* (1955), 342 Mich 20. We find no difficulty in determining on this record the actual intent of the parties at the time of contracting; this case would never have arisen were it not for a difference that developed subsequently in the corporate hierarchy of authority. But corporations are legal persons, and, as individuals in the eyes of the law, they are bound by their contracts in spite of internal disagreements affecting policy.

This brings us to the issue of damages. Defendant contends that in the absence of any proof of the rental value of the service station lease claimed by the plaintiff, there was no evidence of damages to submit to the jury. There was, in fact, other evidence going to the measure of damages in this case. The evidence in support of plaintiff's damage claim would justify a verdict in the amount of $5,400. This is the amount plaintiff stood to gain under the new lease over and above his profits from the station on the hill. The loss was a direct result of the breach. The amount of damages found by the jury was well within the range of the evidence.

Plaintiff was not required to make a showing as to the rental value of the lease above the agreed rent because he was not relying upon this measure of damages. It was enough for him to show with a rea-

sonable degree of certainty what amount would be lost in profits. The test of certainty in granting damages for lost profits does not require absolute certainty. The Court in *Stimac* v. *Wissman, supra,* states the rule on page 28 as follows:

"We do not, however, in the assessment of damages, require a mathematical precision in situations of injury where, from the very nature of circumstances, precision is unattainable. We do require that the amount of profit lost be shown with such reasonable degree of certainty as the situation permits."

Defendant further argues that the court erred "in permitting the plaintiff to testify that the station down below would net him twice what the one up on the hill would, over defendant's objection that such testimony was incompetent and irrelevant as bearing on damages, and in overruling defendant's motion to strike out such testimony." Such testimony by the plaintiff goes to the measure of lost profits, and is, therefore, patently relevant. We must assume that appellant's objection to this testimony on the ground that it is incompetent is directed at the fact that it was based merely upon appellee's opinion. It should be noted, however, that Wilson's opinion on the stand was not substantially different. Where damages cannot be calculated with mathematical precision, opinion evidence as to the amount of damages is admissible. *DeVries* v. *Meyering Land Co.* (1929), 248 Mich 128.

The last issue presented by defendant has been disposed of in our discussion of its first 2 issues and requires no further comment.

Judgment affirmed, costs to appellee.

McGREGOR, P. J., and NEWBLATT, J., concurred.