*In re* TIMKO ESTATE

ORAL ROBERTS EVANGELISTIC ASSOCIATION v TIMKO ESTATE

1. CONTRACTS—ENFORCEMENT—ESTOPPEL—PROMISSORY ESTOPPEL.

A promise is enforceable under the concept of promissory estoppel, where there is a (1) promise that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee, (2) which in fact produced reliance or forbearance of that nature, (3) in circumstances such that the promise must be enforced if injustice is to be avoided.

2. CONTRACTS—VOLUNTARY PROMISES—CHARITABLE CONTRIBUTIONS—ENFORCEMENT.

Public policy demands that voluntary promises to make charitable contributions be enforced.

3. ESTOPPEL—PROMISSORY ESTOPPEL—VOLUNTARY UNILATERAL PROMISES—CHARITABLE CONTRIBUTIONS—ENFORCEMENT.

The doctrine of promissory estoppel is applicable to enforce a voluntary unilateral promise to make a charitable contribution.

4. CHARITIES—CHARITABLE CONTRIBUTIONS—VOLUNTARY UNILATERAL PROMISES—ESTOPPEL— PROMISSORY ESTOPPEL—ENFORCEMENT.

A claim made in a probate proceeding by a nonprofit charitable and religious association against the estate of a deceased member of its board of trustees for the amount of the unpaid balance on the purchase price of a building should be allowed where the deceased made a promise to pay the unpaid balance and this promise, particularly in view of his position on the board of trustees, was one which he should have reasonably expected "to induce action or forbearance of a definite and substantial character on the part of the promisee", where

REFERENCES FOR POINTS IN HEADNOTES

[1, 3, 4] 17 Am Jur 2d, Contracts § 89.
 28 Am Jur 2d, Estoppel and Waiver §§ 48, 49.
 Promissory estoppel, 48 ALR2d 1069.
[2] 15 Am Jur 2d, Charities §§ 62, 123, 130, 141.

the record in the case clearly establishes that the building was purchased by the association solely on the basis of the deceased's promise to pay the unpaid balance, and where the deceased personally attended to the closing details and arranged for a bank loan on behalf of the association.

Appeal from Macomb, Walter P. Cynar, J. Submitted Division 2 November 13, 1973, at Detroit. (Docket No. 15361.) Decided March 4, 1974.

Claim filed by the Oral Roberts Evangelistic Association against the estate of Nicholas I. Timko, deceased, for the amount of the unpaid balance on the purchase price of a building. The probate court denied the claim. Plaintiff appealed to circuit court. Affirmed. Plaintiff appeals. Reversed and remanded with instructions.

*Hill, Lewis, Adams, Goodrich & Tait* (by *Timothy D. Wittlinger),* for plaintiff.

*Neale, Steeh & Hader* and *James F. Simpson,* for defendant.

Before: V. J. BRENNAN, P. J., and T. M. BURNS and VAN VALKENBURG,* JJ.

T. M. BURNS, J. Claimant appeals from an order of the Macomb County Circuit Court which affirmed an order of the Macomb County Probate Court denying its claim against the estate of Nicholas Timko.

The decedent, Nicholas Timko, was a member of the board of trustees of the Oral Roberts Evangelistic Association (hereinafter referred to as the Association). In January of 1964 at a meeting of the board of trustees in Tulsa, Oklahoma, Mr.

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

Timko proposed that the board buy a building in Detroit. He explained that with a down payment of $25,000 the building could be purchased for $145,000. He further stated that in the event the Association purchased the building on these terms and made payments at the rate of $1,000 per month for five years, he would pay the unpaid balance at the end of five years. The minutes of the board of trustees' meeting relating to this proposal read in pertinent part as follows:

"Mr. Timko called attention to a building in Detroit, Michigan known as 7030 East Seven Mile Road, and stated that it was being offered for sale for $155,000, but that he thought he might be able to buy it for the Association for $145,000. Mr. Timko proposed that if arrangements could be made whereby the Association could purchase the building for $145,000 upon a down payment of $25,000 cash, $1,000 per month for five years, and the remaining balance at the end of five years, it would be his intention to make contributions to the Association which would match the deferred payments of the purchase price. It was thereupon moved by Mr. Shakarian, seconded by Carl Wilson and unanimously carried that the Association purchase the said building at a purchase price of $145,000, $25,000 cash down payment, $120,000 to be paid by the Association at the rate of $1,000 per month for five years, and the remaining balance to be paid at the end of the five years, with interest on the unpaid balance of the purchase price at the rate of 6% per annum."

After the trustees' meeting, the minutes were signed by all the members of the board including the decedent, Mr. Timko. Subsequently, on February 21, 1964, the building was purchased by the Association. Mr. Timko dealt with the owners of the property on behalf of the Association, arranged for a bank loan, attended to other closing details, and paid closing costs in excess of $5,000.

On December 17, 1964, Mr. Timko wrote a letter to the president of the Association indicating that he expected to donate the full amount of the building sometime in February of 1965 and that this donation would "clear off all debts". The letter reads in its entirety:

"Dec 17, 1964

"Dear Bro. Moore:
"Received your letter of Nov 19 in regard to the bldg in Det. I appreciate the information by Stanfield & O'Dell. I expect to donate the full amount of bldg sometime in Feb of 65 which will clear off all debts. May Christmas find you and sister Moore in good health.

"In His Service
"/s/ N. Timko"

After Mr. Timko paid the closing costs, he made no additional payments to the Association toward the purchase of the building after the letter of December 17, arrayed above.

Mr. Timko died on January 2, 1969. The Association filed a claim against his estate for the amount of the unpaid balance on the purchase price of the building. After a hearing on the claim before a probate referee, the Association's claim was denied. This decision was later affirmed by both the Macomb County Probate Court and the Macomb County Circuit Court.

On appeal, the Association asserts that Mr. Timko's promise to pay the unpaid balance of the cost of the building constituted a valid enforceable claim against his estate under either the doctrine of mutual promises or in the alternative under the concept of promissory estoppel. However, from the record it is clear that there were in fact no other promises upon which Mr. Timko relied as consider-

ation for his promise regarding the building. Therefore, it is patent that the Association's claim must rise or fall on the applicability of the promissory estoppel doctrine.

In order for a promise to be enforceable under the concept of promissory estoppel, there must be a (1) promise that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee, (2) which in fact produced reliance or forbearance of that nature, (3) in circumstances such that the promise must be enforced if injustice is to be avoided. 1 Restatement of Contracts, § 90, p 110.

Our research has disclosed no authority in this jurisdiction either proscribing or condoning the use of the promissory estoppel doctrine to enforce a unilateral promise to make a charitable contribution. Nonetheless public policy demands that voluntary promises to make charitable contributions be enforced. With this policy in mind, we find no persuasive reason, nor has any been advanced on appeal, from which we could rationally conclude that the concept of promissory estoppel is an inappropriate method for enforcement of such promises. Consequently we hold that the doctrine of promissory estoppel is applicable to enforce a voluntary unilateral promise to make a charitable contribution.

Having determined the applicability of the promissory estoppel doctrine, we next turn to whether the tenets of the doctrine as set forth in 1 Restatement of Contracts, § 90, p 110, *supra,* have been satisfied in the instant case.

As previously recounted Mr. Timko made a promise to pay the unpaid balance on the building in question. This promise, particularly in view of his position on the board of trustees, was one in

which he should have reasonably expected "to induce action or forbearance of a definite and substantial character on the part of the promisee". The record in this case clearly establishes that the building was purchased by the Association solely on the basis of Mr. Timko's promise to pay the unpaid balance after five years. Moreover, Mr. Timko personally attended to the closing details and arranged for a bank loan on behalf of the Association. Under these circumstances we see no alternative other than enforcing Mr. Timko's promise if injustice is to be avoided. Accordingly, the Association's claim against Mr. Timko's estate should have been allowed.

Reversed and remanded for proceedings not inconsistent with this opinion.

All concurred.