THE VOGUE v SHOPPING CENTERS, INC.

1. APPEAL AND ERROR—VERDICTS—DIRECTED VERDICTS.

An appellate court must view the facts in the light most favorable to the nonmoving party when reviewing a motion for a directed verdict.

2. CONTRACTS—ENFORCEMENT—ESTOPPEL—PROMISSORY ESTOPPEL.

A promise in order to be enforceable under the doctrine of promissory estoppel must be a promise that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee, which in fact produced reliance or forebearance of that nature, in circumstances such that the promise must be enforced if injustice is to be avoided.

3. CONTRACTS—PROMISSORY ESTOPPEL—EVIDENCE—SUFFICIENCY—JURY QUESTION.

A plaintiff retail store produced evidence sufficient to go to the jury on the question of promissory estoppel in an action against its landlord for damages for a delay in the opening of the plaintiff's new store where the plaintiff introduced a series of communications from the defendant informing the plaintiff to prepare for an earlier opening, the plaintiff's interior contractor testified that construction was completed to the point where the plaintiff could have opened for business, personnel had

REFERENCES FOR POINTS IN HEADNOTES
[1, 6] 5 Am Jur 2d, Appeal and Error §§ 885, 886.
[2, 3] 17 Am Jur 2d, Contracts §§ 1–5, 89.
28 Am Jur 2d, Estoppel and Waiver §§ 48, 49.
Promissory estoppel. 115 ALR 152, s. 48 ALR2d 1069.
Necessity of conscious acceptance as a consideration, when alleged contract was made, of what is relied upon in that regard. 139 ALR 1036.
[4, 6] 22 Am Jur 2d, Damages § 173.
Breach of covenant for quiet enjoyment in lease. 62 ALR 1322, s. 41 ALR2d 1414.
[5] 31 Am Jur 2d, Expert and Opinion Evidence §§ 36, 53 et seq.

been hired for the earlier opening, most of the inventory was on hand, and budget sheets had been prepared.

4. DAMAGES—LOSS OF PROFITS—PROOFS—REASONABLE CERTAINTY—SPECULATIVE DAMAGES.

Loss of prospective profits may be considered by the jury as an item of damages where the plaintiff can present proofs that are reasonably certain, but was not properly submitted to the jury where the proof of lost profits depended wholly upon a determination of the quantity of sales that the plaintiff would have made during a period of delay in the opening of the plaintiff's retail store; because the store was new, there was no history of sales upon which to base such a determination and the testimony regarding sales volume was speculative.

5. WITNESSES—EXPERT WITNESSES—BASIS FOR OPINION.

An expert witness having personal knowledge, must, before giving his opinion, state the facts upon which he bases it, and cannot, without disclosing the facts, give his opinion directly, or take the facts into consideration in answering hypothetical questions.

6. TRIAL—VERDICTS—DIRECTED VERDICTS—DAMAGES—LOST PROFITS.

A directed verdict should be granted in favor of a defendant where a plaintiff chooses to rely solely on the recovery of lost profits as damages and the plaintiff's testimony regarding lost profits is so speculative that the jury should not consider it.

Appeal from Genesee, Donald R. Freeman, J. Submitted Division 2 December 10, 1974, at Lansing. (Docket No. 18449.) Decided February 11, 1975. Leave to appeal applied for.

Complaint by The Vogue against Shopping Centers, Inc., for damages for loss of profits and for breach of contract. Judgment for plaintiff for loss of profits only. Defendant appeals and plaintiff cross-appeals. Reversed and remanded with instructions.

*Rubenstein, Pruchnicki & Chittle,* for plaintiff.

*Honigman, Miller, Schwartz & Cohn* (by *Avern Cohn* and *Edward F. Kickham),* for defendant.

Before: Danhof, P. J., and Bashara and Allen, JJ.

Bashara, J. This appeal arises out of a suit for damages by plaintiff tenant against its defendant landlord for the loss of profits sustained during a 17-day delay in the opening of plaintiff's new store in the Genesee Valley Shopping Center. The jury awarded plaintiff damages of $27,000.

Plaintiff, a ladies retail store, entered into a lease agreement on January 6, 1969 whereby defendant was to construct a 55-store shopping mall. Each tenant was responsible for the construction of all interior work. Defendant's main activity is to purchase and develop shopping centers, primarily for the J. L. Hudson Company. J. L. Hudson was to be a tenant of Genesee Valley. It was stipulated at trial that defendant in November of 1969 told plaintiff, and the other tenants, they should expect to open in July of 1970. On May 13, 1970 defendant sent a tentative schedule of promotional activities for a July 14–16 grand opening[1] to plaintiff. Towards the end of May labor problems were experienced in the construction industry. Some of the stores were able to continue construction while others were not. On June 30th, the defendant determined that except for the Hudson's store, it would be necessary to postpone the grand opening. Plaintiff was notified of this on July 1 and was allowed to open on August 3, 1970.

At the close of plaintiff's proofs, defendant moved for a directed verdict and then for a judgment notwithstanding the verdict. Defendant ar-

---

[1] The actual opening to the public was to be on July 16, 1970; however a private opening was scheduled for the 14th.

gued that there was no evidence to support a finding that they had promised plaintiff it could open on July 14, 1970. Defendant also contended that plaintiff's proofs showed a promise only of a "mid-summer opening".

It is axiomatic that when reviewing a motion for a directed verdict the facts must be viewed in the light most favorable to the non-moving party. *Kieft v Barr,* 391 Mich 77; 214 NW2d 838 (1974); *Oliver v St Clair Metal Products Co,* 45 Mich App 242; 206 NW2d 444 (1973).

Since there was no express contract, plaintiff's claim must rise or fall on the applicability of the promissory estoppel doctrine. In the case of *In re Timko Estate,* 51 Mich App 662, 666; 215 NW2d 750 (1974), it was stated that in order for a promise to be enforceable under this doctrine, "there must be a (1) promise that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee, (2) which in fact produced reliance or forbearance of that nature, (3) in circumstances such that the promise must be enforced if injustice is to be avoided". See also *Dunnan & Jeffrey Inc v Gross Telecasting Inc,* 7 Mich App 113; 151 NW2d 194 (1967).

The issue thus becomes whether plaintiff produced evidence sufficient to go to the jury on the question of promissory estoppel. There were a series of letters and communications by various officers of defendant corporation informing plaintiff and other tenants to prepare for a July 14–16 opening. A letter was produced from defendant's vice-president of development to plaintiff which stated in part:

"The Grand Opening at Genesee Valley is July 16,

1970. It is imperative that all of our tenant's cash in, so to speak, on the large amount of customers that we are expecting at the Center during the Grand Opening days. This means that your construction department should get their contractors moving in order to complete your store so that you will be opened and doing business with the public on these days.

"We here at Shopping Centers, Inc. are spending hundreds of thousands of dollars in advertising and promotions to get people to come to our Center. As an example we are sending 60,000 invitations to 60,000 homes inviting these people to the Invitational Community Preview Days which will be on Tuesday, July 14th and Wednesday, July 15th."

Plaintiff's interior contractor, utilizing a series of photographs taken on July 14–16, testified that construction was completed to the point where plaintiff could have opened on July 14. Officers of plaintiff's corporation testified that key personnel had been hired for a July 14–16 opening. Most of the inventory was on hand for the date in question, and budget sheets had been prepared. Testimony showed that by preparing for an opening in reliance on defendant's promise, injustice could have been avoided only if defendant kept its promise.

After reviewing the lengthy transcript, we hold that plaintiff did satisfy its burden of going forward on its theory of liability. The crucial issue must then be whether the trial court was correct in allowing speculative evidence as to loss of profits to be considered by the jury.

Although plaintiff operated other stores in the Flint area, the store in question was a new one and had no previous operating history.

The authority in Michigan is conflicting on whether a new business can recover lost profits as an aspect of damages. The more frequently stated

rule allows no recovery of lost profits for a new business since there is no way to estimate losses. *Stimac v Wissman,* 342 Mich 20; 69 NW2d 151 (1955); *Stern Co v Friedman,* 229 Mich 623; 201 NW 961 (1925); *Jarrait v Peters,* 145 Mich 29; 108 NW 432 (1906). The rationale given for the rule is that prospective profits are too speculative and uncertain. Other cases have held that if prospective profits are provable with a reasonable degree of certainty, they can be recovered. *Kezeli v River Rouge Lodge IOOF,* 195 Mich 181; 161 NW 838 (1917); see also dissenting opinion of Judge O'HARA, in *Fera v Village Plaza, Inc,* 52 Mich App 532; 218 NW2d 155 (1974). In *Kezeli, supra,* p 188, where the Court denied recovery of lost profits, Justice STONE wrote, "Without holding that loss of profits may not upon proper showing be the basis of recovery, we must hold that no sufficient foundation was here laid for such recovery".

In *Isbell v Anderson Carriage Co,* 170 Mich 304, 318; 136 NW 457 (1912), the Court wrote:

"It has sometimes been stated as a rule of law that prospective profits are so speculative and uncertain that they cannot be recognized in the measure of damages. This is not because they are profits but because they are so often not susceptible of proof to a reasonable degree of certainty. Where the proof is available, prospective profits may be recovered, when proven, as other damages. But the jury cannot be asked to guess. They are to try the case upon evidence, not upon conjecture."

We agree with the opinion in *Kezeli, supra.* The sole reason for refusing to admit proof of prospective profits is that the proof may be too speculative to submit to the jury. Where a plaintiff can present proofs that are reasonably certain, he should be allowed to make his case.

In the instant matter the sheer volume of testimony did not remove plaintiff's attempted proofs of lost profits from the realm of speculation. Plaintiff's proof of the amount of lost profits depended wholly on a determination of the quantity of sales plaintiff would have made between July 14 and August 3, 1970. Mr. Sidney Melet, president of plaintiff, testified lost sales would have equaled $100,000. Michael Melet testified lost sales would have equaled $110,000. Neither witness was able to state factual reasons for their opinion other than that there were a large number of people who attended Hudson's opening on July 14–16, 1970.

Plaintiff also offered Mr. Joseph Klein, its consultant, as an expert witness. He testified that the sales for the period in question would have equaled 175% of the sales made on the first 17 days plaintiff was open. He admitted on cross-examination that his estimate was speculative but reasonable in his opinion.

Defendant objected to the introduction of the three witnesses' testimony concerning the amount of lost sales. Defendant argues that before expert testimony is admissible there must be a foundation for their opinion, other than mere conclusions.

We are in accord with defendant's position; there must be facts in evidence to support an expert's opinion. *O'Dowd v Linehan,* 385 Mich 491; 189 NW2d 333 (1971). In *Kennedy v Bay City Taxi Cab Co,* 325 Mich 668, 670; 39 NW2d 220 (1949), Chief Justice SHARPE wrote quoting from 82 ALR 1340 that:

" 'While there is some conflict on the question, it is held by the weight of authority that an expert witness having personal knowledge, must, before giving his opinion, state the facts upon which he bases it, and that

he cannot, without disclosing the facts, give his opinion directly, or take them into consideration in answering hypothetical questions.' "

Plaintiff, citing *Uganski v Little Giant Crane & Shovel, Inc,* 35 Mich App 88; 192 NW2d 580 (1971), and *Redinger v Standard Oil Co,* 6 Mich App 74; 148 NW2d 225 (1967), argues that the testimony by its officers was competent expert testimony to establish lost sales. In *Redinger, supra,* there was virtually no discussion by this Court on the question of expert testimony. In *Uganski, supra,* the Court did allow an estimate of lost business with proofs similar to this case. However, in that case there was a six-year prior operating history from which to estimate lost business. While it is true here that plaintiff is an existing business it had no prior operating history in its new store.

A thorough review of the record discloses that no evidence was presented to the jury regarding damages other than the loss of profits. This fact was confirmed by the trial judge in his discussion with the attorneys in chambers at the conclusion of his charge to the jury. Plaintiff did not introduce any direct evidence on the question of out-of-pocket expenses. It chose to rely solely on the recovery of lost profits. We conclude that plaintiff's testimony regarding lost sales was so speculative that the jury should not have considered it. Since there were no other proofs on damages which a jury could have considered, we hold that as a matter of law a directed verdict should have been granted in defendant's favor.

Plaintiff has cross-appealed in this action contending that the court erred in dismissing the

breach of contract count in its complaint. A review of the record and briefs discloses no merit in plaintiff's contention.

Reversed, with instruction to the trial court to enter a judgment in favor of defendant.

Costs to defendant.