*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SUSAN V. LAMBRECHT,

       Plaintiff/Counterdefendant-
       Appellee,

v

ESTATE OF ERNEST K. BATESON, by
PAMELA BATESON, Personal Representative,
TWILIGHT TRACE, LLC, BATESON FARMS &
COMPANY, INC., and ANN ARBOR SUPER
SOILS, INC.,

       Defendants/Counterplaintiffs-
       Appellants.

UNPUBLISHED
March 5, 2019

No. 340428
Oakland Circuit Court
LC No. 2016-152705-CH

Before: TUKEL, P.J., and SHAPIRO and GADOLA, JJ.

PER CURIAM.

Defendant[1] appeals by right from the judgment entered following a bench trial, in which the trial court imposed a constructive trust on real property in plaintiff's favor and found defendant liable to plaintiff for breach of contract. Defendant also challenges the trial court's decision to award plaintiff case evaluation sanctions. For the reasons stated below, we affirm.[2]

---

[1] For ease of reference and brevity, and recognizing that Ernest K. Bateson died during the pendency of this appeal, the use of defendant throughout singularly refers to Ernest K. Bateson. The companies listed as defendants were each wholly owned and operated by Bateson, and where necessary, are referred to by name.

[2] Following a bench trial, we review the trial court's findings of fact for clear error and its conclusion of law are reviewed de novo. *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 195; 761 NW2d 293 (2008).

# I. BACKGROUND

Plaintiff and defendant met in either 2006 or 2007 through an online dating site; they decided not to continue seeing each other. This case arises out of two large payments of money from plaintiff to defendant in 2012, and the underlying purpose and nature of those payments.

Plaintiff testified that she was experiencing financial hardship in 2012 and attempting to downsize by selling her home in Grosse Pointe, Michigan, and purchasing a home in Milford, Michigan. She also had a vacation property in northern Michigan that had gone into foreclosure. Around this time, defendant contacted plaintiff to thank her for referring a client to him. Plaintiff testified that she expressed concern to defendant over her finances, and defendant convinced plaintiff—in order to shield the Milford property from plaintiff's creditors—to assign her rights under a purchase agreement to the Milford property to a limited liability company (LLC) wholly owned and operated by defendant: Twilight Trace, LLC. Plaintiff assigned her rights to the LLC and gave defendant $390,000 to close on the property with the understanding that plaintiff would eventually hold title to the property.

Plaintiff further testified that, months later, defendant approached her and requested a short-term loan of $160,000 to redeem a foreclosed property he owned in Ann Arbor, Michigan. Feeling indebted to defendant for his assistance with the Milford property, plaintiff provided the loan without obtaining a promissory note. When defendant began ignoring requests by plaintiff to meet, and when defendant later denied any agreement existed as described by plaintiff with respect to the Milford property or the $160,000, plaintiff brought suit.

Defendant's testimony set forth a substantially different set of facts. Defendant testified that in 2006 and 2007, he loaned plaintiff $390,000 and $160,000, respectively, in cash. In 2012, plaintiff approached defendant about her desire to repay her total amount owed to defendant—$550,000—but also explained her financial difficulties and asked defendant to help her by using the $390,000 loan repayment to purchase the Milford property and by allowing plaintiff to live on the property as a renter. Defendant agreed to the arrangement as a kindness, and never reduced the rental agreement to writing. Defendant testified that, to the extent that he ignored requests by plaintiff to meet, he did so because plaintiff was always crying and asking defendant to do things for her and defendant believed that plaintiff was manipulating him. Defendant had asked plaintiff to reduce any concerns she had regarding their arrangements to writing prior to meeting with her, and defendant felt the request was reasonable to avoid manipulation. Defendant further contended that the $160,000 payment made subsequent to the purchase of the Milford property was the final payment on plaintiff's debt. Defendant provided a notarized and signed acknowledgment as evidence that the payments from plaintiff were in satisfaction of a $550,000 debt.

# II. PROCEDURAL HISTORY

With respect to the Milford property, plaintiff alleged a claim under the Michigan Limited Liability Company Act, MCL 450.4101 *et seq.*, as well as common-law fraud and unjust enrichment. Plaintiff also alleged breach of contract as to the $160,000 loan agreement. Defendant filed a counterclaim, requesting various relief without identifying a particular cause of action.

At the two-day bench trial, the trial court heard the parties testify as described above. The court received numerous exhibits into evidence and also heard the testimony of David Plauts, who was paid $60,000 by plaintiff for renovations he performed on the Milford property. The court later issued an opinion and order with findings of facts and conclusions of law.

The court first determined that plaintiff's testimony was more credible than defendant's. The trial court found particularly incredible defendant's claims that he made two large cash loans to plaintiff in 2006 and 2007 and lacked any financial records to support the same. The court also noted that the financial circumstances of the parties at the relevant times were consistent with plaintiff's version of events. The court strongly indicated that it found the signed acknowledgement inauthentic. The court then determined that plaintiff established a breach of contract claim with respect to the $160,000 loan she made to defendant and awarded her damages in that amount plus interest. Next, the court ruled that plaintiff established her claim under the Michigan Limited Liability Act, fraud, and unjust enrichment as to the Milford property. The court found that an appropriate equitable remedy would be the imposition of a constructive trust, whereby plaintiff would be awarded title to the property. At a later date, the court awarded plaintiff case evaluation sanctions.

## III. ANALYSIS

### A. TRIAL'S COURT CREDIBILITY DETERMINATION

As an initial matter, on appeal defendant relies on his version of events as testified to at trial. However, this overlooks the fact that the trial court expressly found defendant's testimony not credible. Defendant does not acknowledge the court's reasons for making that finding, let alone present argument from which we could conclude that the court's credibility determination was clearly erroneous. "When an appellant fails to dispute the basis of the trial court's ruling," we need not consider granting relief. *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 381; 689 NW2d 145 (2004). Moreover, we give special deference to the trial court's factual findings when they are based on a credibility determination. MCR 2.613(C); *HJ Tucker and Assoc, Inc v Allied Chucker and Engineering Co*, 234 Mich App 550, 563; 595 NW2d 176 (1999).

Instead of addressing the basis for the trial court's ruling, defendant relies heavily on the acknowledgment, purportedly signed by plaintiff, which provides that the $550,000 paid from plaintiff to defendant was in satisfaction of two promissory notes. Although Michigan law provides that notarized documents are presumptively authentic, see MCL 55.307, that presumption may be rebutted with clear, positive, and credible evidence in opposition to the document. *Vriesman v Ross*, 9 Mich App 102, 106; 155 NW2d 857 (1967). Plaintiff provided testimony that she did not recall signing the document and that she would not have signed the document. Moreover, as the trial court noted, the document is suspiciously vague with respect to the two alleged promissory notes that made up the $550,000. Specifically, the acknowledgment does not indicate the dates of the notes or the amount owed on each. Further, the acknowledgment, dated October 1, 2012, lists Bateson Company as one the lenders of the notes.

However, defendant did not obtain a certificate of assumed name to do business as "Bateson Company" until October 3, 2012.[3]

The acknowledgment must also be viewed in context of defendant's testimony and the other evidence. Plaintiff provided testimony and evidence that 2006 and 2007—the years that defendant claimed he loaned plaintiff money—were lucrative years for her. In contrast, defendant conceded that 2012—the year that plaintiff claimed to have loaned defendant money—was not a good year for him financially. We are also aware of the inherent implausibility of defendant's testimony, which boils down to an assertion that he loaned over a half a million dollars in cash to someone that he barely knew, did not maintain records of the transaction and made no effort to collect this money for years. In sum, the trial court did not clearly err in accepting plaintiff's testimony over defendant's and in finding that there was credible evidence to rebut the presumption that the acknowledgment was a valid notary document.

## B. THE $160,000

Defendant contends that the trial court erred in determining that he breached a contract related to the $160,000 because plaintiff provided no evidence that a contract ever existed or that the $160,000 was ever intended to serve as a loan from plaintiff to defendant. We disagree.[4]

"A party asserting a breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014). The basic elements of a contract are an offer, an acceptance, and consideration. *Kirchhoff v Morris*, 282 Mich 90, 95; 275 NW 778 (1937). "Where the subject-matter does not require the contract to be written, oral agreements are as effective as written ones." *Strom-Johnson Const Co v Riverview Furniture*, 227 Mich 55, 67; 198 NW 714 (1924). *Redinger v Standard Oil Co*, 6 Mich App 74, 79; 148 NW2d 225 (1967).

Plaintiff proved by a preponderance of the evidence that there was an oral loan agreement between her and defendant. Plaintiff testified that defendant contacted her in September 2012 asking for a $160,000 loan in order to redeem a property being foreclosed in Ann Arbor. Plaintiff agreed to loan defendant the money to be paid within one year at 6% interest. Because the loan was capable of being repaid within one year, it was not within the statute of frauds.[5] See

---

[3] In addition to casting doubt on the acknowledgment's validity, this also belies the possibility that Bateson Company previously loaned plaintiff money.

[4] "Whether a contract exists is a question of law that this Court reviews de novo." *AFT Mich v Michigan*, 303 Mich App 651, 659; 846 NW2d 583 (2014).

[5] We note that defendant makes arguments as to the statute of frauds, but never actually cites or applies the statute itself, and so it is difficult to ascertain how he seeks to apply the statute. As stated, the statute of frauds does not apply to the parties' oral loan agreement. To the extent that defendant argues that the statute of frauds applies to plaintiff's claims regarding the Milford

MCL 566.132(1)(a); *Hill v Gen Motors Acceptance Corp*, 207 Mich App 504, 509; 525 NW2d 905 (1994). Thus, the loan agreement did not need to be reduced to writing.

It is undisputed that defendant used the $160,000 he received from plaintiff to redeem the Ann Arbor property and that he has not repaid that amount. As discussed, the trial court found plaintiff's testimony regarding the $160,000 more credible than defendant's. Indeed, it would have been quite fortuitous for defendant to have plaintiff repay a $160,000 loan— purportedly made years prior—precisely at a time when he needed around that amount to redeem the property. Given the court's credibility finding, the court correctly concluded that plaintiff proved her breach of contract claim against defendant.

## C. THE MILFORD PROPERTY

Defendant next contends that the trial court erred in imposing a constructive trust over the Milford property. We disagree.[6]

A constructive trust is "[a]n equitable remedy by which a court recognizes that a claimant has a better right to certain property than the person who has legal title to it." *Black's Law Dictionary* (10th ed). "A constructive trust is imposed, not because of the intention of the parties, but because the person holding title to property would benefit by a wrong or would be unjustly enriched if he were permitted to keep the property." *Union Guardian Trust Co v Emery*, 292 Mich 394, 406; 290 NW 841 (1940). "[S]uch a trust may be imposed when property has been obtained through fraud, misrepresentation, concealment, undue influence, duress, taking advantage of one's weakness, or necessities, or any other similar circumstances which render it unconscionable for the holder of the legal title to retain and enjoy the property . . . ." *Kammer Asphalt Paving Co, Inc v East China Twp Sch*, 443 Mich 176, 188; 504 NW2d 635 (1993) (quotation marks and citations omitted).

The trial court correctly concluded that the circumstances of this case justified the imposition of a constructive trust. The evidence established that plaintiff was greatly distressed when she disclosed to defendant her concerns about the foreclosure of a vacation property. It was then defendant's idea that plaintiff assign her rights to the Milford property to an LLC to shield the property from her creditors. Although plaintiff initially believed that she would be a member of the company, defendant told her that she could not sign any of the documentation pertaining to the company lest her creditors come after the property. Per plaintiff's testimony, defendant convinced her to give him $390,000 and assign her rights to the Milford property with the expectation that defendant would eventually deed the property to plaintiff, or include her in

---

property, we note that plaintiff has never sought to enforce a contract with respect to that property and has instead sought and obtained equitable relief.

[6] "When reviewing a grant of equitable relief, an appellate court will set aside a trial court's factual findings only if they are clearly erroneous, but whether equitable relief is proper under those facts is a question of law that an appellate court reviews de novo." *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 197; 747 NW2d 811 (2008).

the LLC. Plaintiff gave the money and assigned her rights in reliance on that expectation. As further evidence of the parties' agreement, plaintiff took immediate physical control of the property, insured the property, paid the property taxes, undertook an extensive remodeling of the home on the property, and eventually began living on the property without question from defendant. Only years later did defendant begin to make assertions indicating ownership over the property. Thus, the evidence established that plaintiff paid for the property and thereafter acted as the owner consistent with plaintiff's testimony of the parties' agreement. We agree with the trial court that a constructive trust was warranted in this case and necessary to prevent unjust enrichment.[7]

We note that defendant briefly asserts that plaintiff should not be entitled to equitable relief in this case based upon the doctrine of unclean hands. "It is well settled that one who seeks equitable relief must do so with clean hands." *Attorney General v PowerPick Club*, 287 Mich App 13, 52; 783 NW2d 515 (2010). However, defendant fails to explain why plaintiff's hands are unclean. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims . . . ." *Houghton v Keller*, 256 Mich App 336, 349; 662 NW2d 854 (2003). Thus, defendant has abandoned this argument. *Id*.

### D. ATTORNEY FEES

Finally, defendant argues that the trial court erred in awarding plaintiff attorney fees and costs. We disagree.[8]

Defendant contends that the trial court erred when it awarded attorney fees pursuant to MCR 2.625 because it cannot be shown that his defense or counterclaim was frivolous. However, it is abundantly clear that the trial court did not rely on MCR 2.625, but instead assessed fees pursuant to MCR 2.403(O) for defendant's rejection of a case evaluation more favorable to defendant than the ultimate verdict.[9] MCR 2.403(O)(1) specifically provides that,

---

[7] To establish unjust enrichment, a plaintiff must demonstrate "(1) the receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit." *Morris Pumps*, 273 Mich App at 195. In this case, defendant received a benefit from plaintiff, i.e., legal title to the Milford property. For the reasons discussed, it would be inequitable to allow him to retain title to the property. Because we agree with the trial court that plaintiff proved unjust enrichment and that a constructive trust was an appropriate remedy, we decline to address the trial court's findings that plaintiff also proved her fraud claim and her claim under the Michigan Limited Liability Act.

[8] A trial court's award of attorney fees and costs is reviewed for an abuse of discretion. *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Id*.

[9] We note the error in the trial court's opinion and order regarding reconsideration in which it states that it "awarded costs to Plaintiff as the prevailing party under MCR 2.625." Notwithstanding the error, it is clear from the context and the previous opinion regarding case evaluation sanctions that the award of attorney fees was based on MCR 2.403(O).

when a party rejects a case evaluation, "that party must pay the opposing party's actual costs unless the verdict is more favorable to the rejecting party than the case evaluation." "Actual costs" include "a reasonable attorney fee based on a reasonable hourly or daily rate as determined by the trial judge for services necessitated by the rejection of the case evaluation . . . ." MCR 2.403(O)(6). Defendant makes no argument as to whether MCR 2.403 was misapplied, or whether the trial court erred in calculating a reasonable fee. Therefore, he has abandoned this issue on appeal. See *Derderian*, 263 Mich App at 381.

Affirmed.


/s/ Jonathan Tukel
/s/ Douglas B. Shapiro
/s/ Michael F. Gadola